**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TONY REDDING,**

          **Plaintiff,**

**-vs-**                                              **Case No. 6:04-cv-1715-Orl-31DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

          **Defendant.**
_____

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.**    **Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on September 20, 2001. R. 79-82. He alleged an onset of disability on April 14, 2000, due to a C4-5 disc protrusion. R. 106. His application was denied initially and upon reconsideration. *See* R. 18. Plaintiff requested a hearing,

which was held on March 26, 2003, before Administrative Law Judge Henry U. Snavely (hereinafter referred to as "ALJ"). R. 30-61. In a decision dated May 8, 2003, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 15-22. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 216-18. The Appeals Council denied Plaintiff's request on October 1, 2004. R. 4-7. Plaintiff filed this action for judicial review on November 24, 2004. Doc. No. 1.

### B.    Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of neck, back, and foot impairments. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease of the cervical and lumbar spine and malunion of the fifth metatarsal on the left foot, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19. Plaintiff testified at the hearing that he had worked as a security consultant, telemarketer, and mail handler. R. 39, 42-43. Although he had called to inquire about other jobs, he had not actually applied for them. R. 39. Plaintiff was convicted of possession of cocaine and was incarcerated from 1991 to 1996. R. 47. Plaintiff also testified that he lifts weights of fifteen to twenty-five pounds as a hobby, but that he can only walk sometimes across the street or sometimes a block without pain. R. 49. He testified that he does not drive and has no license.[1] R. 48.

---

[1]During an interview with the SSA, Plaintiff stated as of September 1, 2001 that he owned a 1995 Oldsmobile Aurora. R. 80. Plaintiff responded on SSA forms dated April 1, 2002 that he does not drive. R. 92.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform medium work, as he could lift up to fifty pounds and sit, stand, and walk for at least six hours in an eight-hour workday, with normal work breaks and with no postural, manipulative or environmental restrictions. R. 21. In making this determination, the ALJ gave limited weight to the Plaintiff's testimony for the reasons set forth in the body of the decision.[2] R. 21. Based upon Plaintiff's RFC of medium work, the ALJ determined that Plaintiff could perform his past relevant work as a security consultant, telemarketer, or mail handler for the postal service. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 21.

Plaintiff now asserts two points of error. First, he argues that the ALJ erred by finding he could perform his past relevant work. Second, he asserts that the ALJ erred by improperly applying the pain standard and in evaluating his credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the

---

[2] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, medical reports and examinations. R. 21.

existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Crawford*, 363 F.3d at 1158-59; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *A. PAIN AND CREDIBILITY*

Plaintiff asserts that the ALJ erred in evaluating his pain due to neck, back and foot impairments and by giving limited weight to his subjective complaints; thus, finding he had the RFC to perform medium work. He contends that the record supports the credibility of his limitations.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he cited the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 20-21. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). The ALJ complied with the Eleventh Circuit's standards in assessing the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, before discussing Plaintiff's RFC, the ALJ stated,

> In determining the weight to give the claimant's testimony under the guidelines of Social Security Ruling 96-7p, it is noted that the radiographic evidence of degenerative disc disease of the cervical and lumbosacral areas of the spine has been minimal. On examinations, he has demonstrated full range of motion except for some restriction in the cervical region. There is no motor or sensory deficit and straight-leg raising has been negative. His grip strength has been normal on examinations. Thus, his allegation of dropping things does not seem to be supported. In addition, his weight lifting of 15-25 pounds does not support his testimony regarding numbness in the right hand and dropping things. The clinical findings of minimal osteoarthritic changes and a tiny central disc herniation at L2-3 would not generally be indicative

>of a condition which would limit an individual's ability to lift, sit, stand, or walk. Due to the findings in the cervical region, it is reasonable to conclude that Mr. Redding would have difficulty lifting in excess of 50 pounds, but there is no evidence of an impairment or combination thereof which would be expected to impose any other limitation of function. Therefore, limited weight can be given to the claimant's testimony.

R. 21.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that the ALJ improperly disregarded Plaintiff's complaints on the basis that the radiographic evidence on the cervical and lumbar areas have been minimal when, Plaintiff contends, Plaintiff has actually been found to have herniations at both the cervical and lumbar areas, which are not the minimal findings suggested by the ALJ. Plaintiff also contends that the ALJ's rejection of Plaintiff's allegations of dropping things is erroneous because Dr. Rosillo (who was relied upon by the ALJ) noted decreased motor strength of the upper left extremity. R. 141. Plaintiff points to his testimony that he can lift weights, but because of numbness in his fingers, he sometimes drop things. R. 49. The Commissioner's position is that the ALJ correctly gave limited weight to Plaintiff's testimony regarding his pain and limitations. R. 21.

Plaintiff was involved in a motor vehicle accident on April 14, 2000 and was treated for a forehead contusion, spinal board clearance, cervical spine strain, left knee contusion and chest

contusion. R. 125-36. Plaintiff had some pain in his left knee, but his ligamentous structures were intact, and he maintained full range of active motion in all extremities with 5/5 strength. R. 128. X-rays of Plaintiff's spine did not demonstrate any acute bony abnormalities or disc height loss. R. 128, 134-35. He reported that at that time he was not taking any medications, smoked half a pack per day, and did not drink alcohol[3]. R. 126. Plaintiff was told to stay off of work for four days. R. 128-29. Plaintiff continued to work for three months after the accident, then stopped. R. 138.

On December 19, 2000, Dr. Peter J. Godleski reported that Plaintiff's cervical spine and lumbar spine were tender to palpation with pain on range of motion, but the lower extremities were neurovascularly intact and his impression was cervical sprain or strain with disc protrusion/herniation at the C4/C5 level; thoracic sprain or strain, and lumbosacral sprain or strain. R. 139. Dr. Godleski prescribed conservative treatment including anti-inflammatories and analgesics as needed. R. 139. Plaintiff had chiropractic therapy for seven months that improved some of his pain. R. 140.

On November 7, 2001, Dr. Rosillo's consultative examination found tenderness in the cervical spine with moderately restricted range of motion, but there was no back tenderness; range of motion of the back was full; straight leg raising was negative; sensation and reflex testing were normal; and motor strength was grade four in the upper extremities and grade five in the lower extremities. R. 141. The ALJ relied on Dr. Rosillo's objective findings, which were not indicative of a totally disabling impairment. Dr. Rosillo opined that Plaintiff should be able to stand or walk six hours with two hour breaks during an eight hour day; Plaintiff had no restriction for sitting and no restriction for

---

[3]Three months prior to the car accident, on January 12, 2000, Plaintiff was advised to "hold" the alcohol and he refused to attend the recommended substance abuse clinic or the tobacco cessation program. R. 172.

ambulation; he was able to lift 50 pounds occasionally and 25 pounds frequently; and he had no postural, manipulative, or environmental restrictions. R. 142.

At the second consultative examination on April 25, 2002 by Dr. Nitin Haté revealed that Plaintiff was "[h]ealthy, well built, muscular and comfortable" with calluses on both hands and no obvious deformities. R. 153. Straight leg raising was negative bilaterally; the spine was normal; there were no spasms; sensations were generally normal; motor function was normal; deep tendon reflexes were within normal limits; grip strength was normal; and there was full range of motion in all joints. R. 154. Dr. Haté noted that Plaintiff reported that he had severe pain and was unable to work, but the physical examination was essentially within normal limits. R. 155. Dr. Haté stated that in the absence of any definite physical findings, he was unable to recommend any restrictions. R. 155.

Plaintiff was subsequently treated at the Veterans Administration for back pain and X-rays of the lumbosacral spine taken on May 29, 2002 showed only minimal osteoarthritic changes. R. 164-81, 204-15. An MRI scan on July 17, 2002, showed a tiny central disc herniation at L2-3 and mild degenerative changes. R. 167, 169, 205. On physical examination, Plaintiff had some radiculopathy-type pain, but there was good range of motion in the lower back, motor strength was 5/5, and reflexes were normal. R 164-65, 207. A chiropractor[4], Dr. Klonel, evaluated Plaintiff on October 8, 2002 for attorney Jonathan Rotstein and opined that an August 1, 2002 motor vehicle accident had exacerbated his prior worker's compensation injury. R. 201-03. However, the CT taken at the hospital at the time

---

[4] A chiropractor is not an acceptable medical source upon which the ALJ must rely, but is merely classified as another source of information that may be considered. *See* 20 C.F.R. §§ 416.913(d)(1) (statements from chiropractors *may* be considered by the ALJ).

of the injury read by Dr. Mansilla, M.D., indicated minimal degenerative disc disease, with minimal intervertebral disc space narrowing at C4-C5 and C5-C6.  R. 192.

There is an absence of any significant neurological deficits or atrophy in Dr. Rosillo's or Dr. Haté's 2001 exam reports and their opinions of Plaintiff's RFC support the ALJ's finding that Plaintiff could perform medium work.  R. 21.  The CT report from August 2002 indicates only minimal spine problems and the ALJ properly rejected Plaintif's allegations of disabling musculoskeletal pain as not credible.

Plaintiff also contends that the ALJ failed to recognize that his problems with his foot could impact his ability to sit, stand, and walk.  The Commissioner points out that ALJ did find that Plaintiff's malunion of the fifth metatarsal on his left foot was a severe impairment.  R. 19.  X-rays taken at the VA on May 29, 2002 of Plaintiff's left foot showed an old healed fracture of the fifth metatarsal from an injury approximately 22 years ago, with no other abnormality.  R. 165, 170, 204.  He had been treated conservatively with a short leg cast with a walking heel support in it and eventually went on to a non-union.  R. 165.  He later had an open reduction internal fixation of the metatarsal fracture and finally went on to union.  R. 165.  Wearing the cast for eight to nine months caused lower back pain and altered his gait.  R. 165, 181.  On June 8, 2002 he was seen at the VA Clinic complaining of pain over the incision for the left 5th metatarsal.  R. 165.  X-rays demonstrated well healed, slightly malunited 5th metatarsal but in adequate alignment.  R. 165.   As the Commissioner points out, both consultative examiners, Drs. Rosillo and Haté, found that Plaintiff had a normal gait and could toe and heel walk.  R. 141, 153.

In this case, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints and finding that Plaintiff can perform medium work.  The ALJ focused on the objective clinical

findings in his credibility discussion which reported no or tiny herniations, and mild or minimal issues in the other spinal areas, and adequate alignment of the 5th metatarsal. R. 164 (July 20, 2002); 192 (August 1, 2002). The ALJ's reasons included inconsistencies between Plaintiff's reports and the examination findings, as well as inconsistencies between Plaintiff's statements and his activities, such as lifting fifteen to twenty-five pound weights. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's reasons are supported by substantial evidence.

### *B. PAST RELEVANT WORK*

Plaintiff contends that the ALJ erred in finding that Plaintiff could perform his past relevant work (R. 21) even though Plaintiff testified that he had performed certain functions that he no longer could perform with his impairments.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

"Past relevant work" is work experience that was done within the last fifteen years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). Based upon Plaintiff's RFC of medium work, the ALJ determined that Plaintiff could perform his past relevant work as a security consultant, telemarketer, or mail handler for the postal service. R. 21. Plaintiff claims that because he suffered from back and leg pain, he could not return to his past relevant work. Plaintiff points to his testimony that his past work selling security systems required him to sometimes crawl up in attics at least enough to take a look to see if wires could be run for the security system for homeowners and businesses. R. 40, 57. He also testified that he sold phone services, and Plaintiff contends that the ALJ should have asked for a description as to how that job was performed. Plaintiff also contends that the ALJ erred by finding he could perform the work of a mail handler, emptying trucks and sorting mail for the U.S. Post Office, which he described as heavy work. R. 43.

The Commissioner contends that, even assuming arguendo that Plaintiff could not perform his past work as a mail handler, he could still perform his past work as a security consultant and telemarketer, which, according to Plaintiff, were performed at a level consistent with an RFC for medium work. Plaintiff testified that his job as a security consultant involved presenting and selling security packages to homeowners and businesses and determining what areas of access into the premises needed to be secured, but he was not involved in the actual installation of the system. R. 40. Plaintiff testified that his job as a telemarketer involved selling phone service and other products. R. 42-43. The Commissioner does not dispute that Plaintiff's job as a mail handler required that he perform heavy work emptying trucks and sorting mail, lifting fifty pounds frequently and one hundred pounds occasionally. R. 43, 120.

In this case, the ALJ properly determined that Plaintiff could perform some of his past relevant work based on an RFC for medium work. The Commissioner concedes that the mail handler position was at the heavy exertional level and not relevant as past work. However, as the Commissioner argues, Plaintiff could still perform either of the other two past relevant positions of telemarketer or security consultant at the medium exertional level. His job as a security consultant involved presenting and selling security packages to homeowners and businesses, and required him to crawl in attics to determine if wires could be run for the security system.[5] R. 40.

Plaintiff indicated that his job as a telemarketer involved selling phone services and other products. R. 42-43. Plaintiff now erroneously contends that the ALJ erred by not inquiring of Plaintiff precisely what his telemarketing position entailed. Plaintiff testified that he was a telemarketer for a couple of years selling phone service for GTE, BellSouth, ICM, and its predecessor. R. 42-43. He then worked for a company called Dial American and sold "whatever products other companies wanted them to sell." R. 43. There is nothing in Plaintiff's testimony or SSA forms to suggest that his telemarketing position required anything other than selling goods or services over the phone, which would certainly be within the abilities of an RFC for medium work. Accordingly, the ALJ's finding that Plaintiff could return to his past relevant work is supported by substantial evidence.

## *IV. CONCLUSION*

The ALJ appropriately considered the circumstances of Plaintiff's accidents and resulting injuries and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law

---

[5]As a practical matter, Plaintiff's incarceration might preclude him from obtaining any security-related employment. *See* R. 47.

and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 3, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record